UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SERGEI CHEPILKO,

                              Plaintiff,                    18 Civ. 2195 (ALC) (SDA)

        -against-

POLICE OFFICER SCOTT HENRY,
SERGEANT TARAKUR CHOWDHURY,

                              Defendants.


**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF
<u>ELECTRONICALLY STORED INFORMATION</u>**


HUNTON ANDREWS KURTH LLP

Mitchell E. McCloy
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
mmccloy@huntonAK.com

Kathleen E. Perkins (*pro hac vice*)
One South at The Plaza, Suite 3500
101 South Tryon Street
Charlotte, North Carolina 28280
Telephone: (704) 378-4713
Facsimile: (704) 378-4890
kperkins@HuntonAK.com

*Attorneys for Plaintiff Sergei Chepilko*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

    A.    The Incident ........................................................................................................3

    B.    Existence of Video Footage of the Incident .......................................................4

    C.    Plaintiff's Repeated Efforts to Obtain Video Footage of the Incident Put Defendants on Notice .........................................................................................6

    D.    CCRB Investigation and Timely Request for the Video Footage of the Incident ...........7

    E.    Defendants' Continued Bad Faith Obfuscation ................................................9

    F.    Defendants Admit to the Destruction of the Video Footage ...........................10

II.      ARGUMENT .....................................................................................................11

    A.    An Adverse Inference Is Warranted Here .......................................................11

        1.    The NYPD was obligated to preserve the Video Footage. .....................11

        2.    NYPD failed to take reasonable steps to preserve the Video Footage. ....................14

        3.    The Video Footage cannot be restored. .................................................15

        4.    NYPD intended to deprive Mr. Chepilko of the Video Footage. .............15

    B.    NYPD's Spoliation is Properly Attributed to Defendants. .............................19

    C.    Mr. Chepilko's Motion is Timely. .................................................................21

III.      CONCLUSION ..................................................................................................22

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Aquino v. Alexander Cap., LP*,
   No. 21-cv-1355 (JSR), 2023 WL 2751541 (S.D.N.Y. Mar. 31, 2023).................................16

*Castro v. Smith*,
   No. 16-CV-8147, 2023 WL 5371311 (S.D.N.Y. Aug. 22, 2023)....................................12, 13

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
   No. 13-CV-2581 (PKC) (JLC), 2021 WL 4190628 (S.D.N.Y. Aug. 18, 2021)...............11, 12

*Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 61 .......................................................14

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*,
   647 F. Supp. 3d 145 (S.D.N.Y. 2022)...................................................................15

*Gross* v. *Lunduski*,
   304 F.R.D. 136 (W.D.N.Y. 2014).........................................................................19

*Guillory* v. *Skelly*,
   No. 12-cv-00847(F), 2014 WL 4542468 (W.D.N.Y. Sept. 11, 2014)....................................20

*Hughes v. City of*
   2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017) .................................................14, 15

*Karsch v. Blink Health Ltd.*,
   2019 WL 2708125 (S.D.N.Y. June 20, 2019) .........................................................11

*Moody v. CSX Transp., Inc.*,
   271 F. Supp. 3d 410 (W.D.N.Y. 2017)...........................................................16, 18

*Ottoson v. SMBC Leasing & Fin., Inc.*,
   268 F. Supp. 3d 570 (S.D.N.Y. 2017)..................................................................18

*Ransom v. Andrews*,
   No. 21-CV-6343 (JPO) (BCM), 2022 WL 16555362 (S.D.N.Y. Oct. 31, 2022).............16, 21

*Ronnie Van Zant, Inc. v. Pyle*,
   270 F. Supp. 3d 656 (S.D.N.Y. 2017), *rev'd on other grounds sub nom.*
   *Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc.*, 906 F.3d 253 (2d Cir. 2018)........................19

*Rosa v. Genovese Drug Stores, Inc.*,
   No. 16-CV-5105 (NGG) (LB), 2017 WL 4350270 (E.D.N.Y. Apr. 24, 2017)................13, 18

*Shim-Larkin v. City of N.Y.*,
   No. 16-CV-6099 (AJN) (KNF), 2019 WL 5198792 (S.D.N.Y. Sept. 16, 2019)..............13, 18

*Stanbro v. Westchester Cnty. Health Care Corp.*,
   Nos. 19-CV-10857 (KMK) (JCM), 20-CV-1591 (KMK) (JCM), 2021 WL
   3863396 (S.D.N.Y. Aug. 27, 2021) ............................................................................13, 19, 20

*Taylor* v. *City of N.Y.*,
   293 F.R.D. 601, 610 (S.D.N.Y. 2013) ..................................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
   No. 03-MD-1570 (GBD) (SN), 2018 WL 4096106 (S.D.N.Y. Aug. 27, 2018) ....................21

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999)...................................................................................................21

**Other Authorities**

Fed. R. Civ. P. 37 ................................................................................................ *passim*

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 37(e) and Local Civil Rule 7.1, Plaintiff Sergei Chepilko ("Plaintiff") respectfully moves this Court for an order applying an adverse inference against Defendants as a result of the destruction of the video footage of the very incident at issue in this case.  Plaintiff's claims arise from an altercation in Times Square in Manhattan on March 11, 2017.  Plaintiff approached Police Officer Defendants Henry and Chowdhury seeking protection from a third party who had stalked and threatened Plaintiff with bodily harm.  While Plaintiff was reporting the threats to Defendant Chowdhury, Defendant Henry forcefully pushed and shoved Plaintiff several times.  When Plaintiff requested the officers' names and badge numbers, Defendant Henry retaliated by issuing Plaintiff a criminal summons.  When Plaintiff tried to record Defendants' conduct during the incident, he was prevented from doing so.

The following day, on March 12, 2017, Mr. Chepilko made a 911 call reporting the incident.  On March 13, 2017, just two days following the incident, Plaintiff submitted Freedom of Information Law ("FOIL") requests identifying specific video footage from two NYPD security cameras taken on March 11, 2017 at approximately 9:55pm (within the window of 9:30pm to 10:30pm)—"Video 26-164" and "Video 26-158" (hereinafter, the "Video Footage").  On March 20, 2017, the NYPD denied Plaintiff's FOIL requests, including for "privacy" reasons.

***First,*** notwithstanding the NYPD's position that it would refuse to produce to Plaintiff the Video Footage, including on "privacy" grounds, as of March 13, 2017, Defendants were on notice of potential litigation.  Thus, Defendants had a duty to preserve all potentially relevant evidence, especially the Video Footage of the incident formally and specifically identified and requested.  In addition, Plaintiff's reports of his claims and specific requests for video evidence, put in motion an external investigation by the CCRB, in which Defendants Henry and Chowdhury were interviewed, as well as the NYPD's own internal investigation.  These investigations too, put

Defendants on notice that litigation was afoot. However, the Defendants failed to preserve the Video Footage. Under the NYPD's retention policy, footage from NYPD security cameras is retained for a period of 30 days (or 28 days for cameras of a certain model) after which time it is deleted. Notwithstanding the repeated requests by both Plaintiff and the CCRB in connection with its investigation, the Video Footage of the incident from the two identified cameras was ultimately destroyed on or about April 11, 2017, 30 days after it was recorded.

*Second*, Defendants intended to deprive Mr. Chepilko of the Video Footage, and that intent to deprive is abundantly supported by the record. A few days after the incident, on March 15, 2017, the CCRB specifically requested video footage from the NYPD's Technical Assistance Response Unit ("TARU"). Again, on March 17, 2017, the CCRB specifically requested Video Footage from the NYPD's Lower Manhattan Security Initiative ("LMSI"). In violation of NYPD's own regulations requiring a response be sent within 10 days to the IAB's CCRB Liaison, the NYPD stalled, waiting until April 18, 2017, approximately a week after the 30-day retention period had lapsed, to inform the CCRB that TARU would fill its request for the video footage by "end of week." Then, on April 24, 2017, approximately two weeks after the end of the retention period, the NYPD reported that the automatic deletion feature destroyed the requested Video Footage. The NYPD's intent to deprive Mr. Chepilko of the Video Footage warrants a sanction of an adverse inference that the destroyed footage was unfavorable to Defendants.

*Third*, the destruction of the Video Footage prejudiced Plaintiff. In this case, Defendants list no documentary evidence; rather, they intend to call five NYPD police officers to the stand, presumably to corroborate Defendant Henry and Defendant Chowdhury's claim that absolutely no physical force was used on Plaintiff and that their conduct during the altercation was appropriate and justified. These factual assertions are hotly in dispute based on Plaintiff's own version of what

occurred on March 11, 2017 in Times Square.  The Video Footage taken by CCTV of the altercation would have resolved the critical factual disputes in this case.  Moreover, Mr. Chepilko need not establish that the Video Footage was beneficial to him to make this showing.  The destruction of evidence that *could* have shown the aggression and physical force used by Defendant Henry constitutes prejudice, especially in light of Plaintiff's claim that he was prevented from taking video footage of their conduct with his phone.  Indeed, even if the NYPD did not intend to deprive Plaintiff of the Video Footage, sanctions would remain appropriate because Mr. Chepilko has been prejudiced.

**Fourth**, the destruction of the Video Footage can be attributed to Defendants Henry and Chowdhury.  Although NYPD is no longer a party to this litigation, there remains an alignment of interests between the NYPD and Defendants Henry and Chowdhury such that the NYPD's spoliation of key evidence merits sanctions for those Defendants. In any event, because Defendants also had the practical ability to obtain the video evidence from the NYPD, the spoliation of the video evidence can be imputed to Defendants Henry and Chowdhury on that basis as well.

## FACTUAL BACKGROUND

### A.    The Incident

On March 11, 2017, Sergei Chepilko approached NYPD officers on Seventh Avenue, in between 44th and 45th Streets in Times Square Manhattan.[1]  Plaintiff, a ticket seller, sought the assistance of the officers after another ticket seller in the area had stalked, harassed, and made threatening gestures toward Plaintiff, including repeatedly gesturing with his hand cutting his neck.[2]  In response to Plaintiff's report of the other ticket seller's threats, Defendant Chowdhury dismissively stated that the gestures of the other ticket seller were friendly, "like shaving," and

---

[1] ECF No. 2 ("Compl.") at 5.
[2] *Id.*

3

refused to investigate Plaintiff's report.[3]  Meanwhile, while Plaintiff was talking to Defendant Chowdhury, Defendant Henry "started forcefully pushing" Plaintiff, continued to push him "several" times,[4] and ordered him to "stop talking to sergeant."[5]  Plaintiff answered that Defendant Chowdhury had directed the Plaintiff to approach the NYPD van in which Chowdhury was sitting.[6] Plaintiff "repeatedly ask[ed] Sgt. Chowdhury to stop P.O. Henry's aggression" towards Plaintiff.[7] Distressed by the officers' dismissive response to his requests for help against the threatening perpetrator and Defendant Henry's physical aggression toward Plaintiff, Plaintiff demanded the officers' names and badge numbers.[8]  Defendant Henry was visibly angered by Plaintiff's request and issued Plaintiff a criminal summons in retaliation.[9]  As these events were occurring, Plaintiff attempted to record the incident with his phone, but the officers prevented Plaintiff from recording their conduct towards him.[10]

## B.  Existence of Video Footage of the Incident

Despite defendants' efforts to prevent Plaintiff from recording their actions on his phone, the incident was, in any event, recorded.  Moreover, Defendant Henry admitted to having been aware that the incident was being recorded by video cameras.[11]  Indeed, the NYPD uses Closed-

---

[3] *Id.*

[4] Ex. A to Decl. of Mitchell E. McCloy at DEF 031.  Exhibit citations in this brief all refer to the Exhibits to the Declaration of Mitchell E. McCloy, being filed herewith.

[5] Compl. at 5; ECF No. 86 at 1.

[6] Compl. at 5; ECF No. 86 at 1.

[7] Compl. at 5–6; ECF No. 86 at 1.

[8] Compl. at 6; ECF No. 86 at 2.

[9] Compl. at 6; ECF No. 86 at 2.

[10] Ex. B at DEF 037.

[11] Ex. C (Henry Tr.) at 53:14-24 ("You earlier said that on patrol, you've -- to your knowledge, you've been recorded by security cameras, right? … A. We work in Times Square, there's cameras.  Q. Okay.  So you have no reason to believe you were not recorded, right? A. No."); Ex. D (Chowdhury Tr.) at 38:6-22 ("Q.  Are you aware of any NYPD CCTV cameras with a field of view that contains the location of the incident on March 11th, 2017 in the evening of Mr. Sergei Chepilko?  A.  They have cameras available . . . .Q.  So you've never viewed any

Circuit Television (CCTV) systems to record real-time visual information and video images of people within range of the cameras, "provide archived video coverage for investigations and criminal prosecutions, enhance public and officer safety, and provide infrastructure security."[12] NYPD Detectives, Sergeants, and higher ranked members have access to the live video of the CCTV footage.[13]  Members of the public may also obtain video recordings from NYPD CCTV systems by request, under the New York State FOIL.[14]  However, under the NYPD's retention policy, footage from NYPD security cameras is typically retained for a period of 30 days (or 28 days for cameras of a certain model), after which time it is deleted.[15]

In addition, in June 2016, the NYPD began requiring officers to report general use-of-force, as opposed to previously only requiring officers to report firearm discharges, "to better track and investigate" the use of force by officers.[16]  Simultaneously, the NYPD introduced detailed procedures that directed investigation into and review of the use of force incidents reported by officers, as well as allegations of excessive force against officers.[17]  At the end of the fourth quarter of 2016, the NYPD published its first "Use-of-Force Report."[18]  "The goal of this policy overhaul was to improve oversight, enhance training, generate comprehensive reporting, and thoroughly

---

CCTV recorded video footage containing a field of view of the location of the incident on March 11th, 2017 in the evening?  A. Never?  I mean I viewed cameras in the area.").

[12] NYPD, Closed Circuit Television Systems: Impact And Use Policy (Oct. 26, 2023), at 4, *available at*: https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/post-final/cctv-systems-nypd-Impact-and-use-policy_10.26.23.pdf.

[13] *Id.*

[14] *Id.* at 8.

[15] *Id.* 7.

[16] NYPD Annual Use-of-Force Report 2017, at 5–6, *available at*: https://www.nyc.gov/assets/nypd/downloads/pdf/use-of-force/use-of-force-2017.pdf.

[17] NYPD Annual Use-of-Force Report 2016, at 56–58, *available at:* https://www.nyc.gov/assets/nypd/downloads/pdf/use-of-force/use-of-force-2016.pdf.

[18] *Id.* at Police Comm'r James P. O'Neill's Message ("This document is the first NYPD Annual Use-of-Force Report").

investigate all uses of force."[19]  The 2016 Use-of-Force Policy,[20] which was the policy in effect on the date of the incident, specifically requires that allegations of excessive force (including incidents with no apparent injury) be reported and investigated.[21]  Among other things, the policy instructs the investigator to canvass for witnesses and possible video recording of the incident.[22]  If video of the incident is identified, it should be retrieved and invoiced as investigatory evidence.[23]

**C.    Plaintiff's Repeated Efforts to Obtain Video Footage of the Incident Put Defendants on Notice**

The day after the incident, on March 12, 2017, Plaintiff called 911 to report the incident.[24] On that call, Plaintiff "stated NYPD cameras 7-26158 and 7-2669 are located on Broadway and West 44 street and West 45 street.  Several cameras are also located at 1515 Broadway, showing Officer Henry pushing him."[25]  The 911 operator elevated Plaintiff's claims to the NYPD's Internal Affairs Bureau ("IAB"), to which Plaintiff himself made a report.[26]  The IAB opened its own investigation into the incident that day on March 12, 2017.[27]

On March 13, 2017, just two days following the incident at issue in this lawsuit, Plaintiff walked into the precinct and submitted two FOIL requests to the NYPD FOIL Unit to provide the video recordings from two NYPD security cameras in the vicinity of the incident.[28]  Specifically,

---

[19] NYPD Annual Use-of-Force Report 2017, at 5.
[20] *See generally* NYPD Annual Use-of-Force Report 2016.
[21] *Id.* at Appendix A (PG 221-03), p. 58.
[22] *Id*. at 61.
[23] *Id*. at 58.
[24] Ex. A at DEF 031.
[25] *Id.*
[26] *Id.*
[27] *Id*.
[28] Exs. E & F (NYPD summaries of Plaintiff's FOIL Requests Nos. 3390 and 3391).

Plaintiff requested footage taken on March 11, 2017 at approximately 9:55pm (within the window of 9:30pm to 10:30pm)[29]—"Video 26-164" and "Video 26-158."[30]

Plaintiff's FOIL requests for the two videos were acknowledged on March 20, 2017, but were "denied."[31]  Notwithstanding the NYPD's position that it would refuse to produce the Video Footage requested by Plaintiff, including for "privacy" reasons,[32] at that point in time, Defendants had an unmistakable duty to at a minimum preserve the evidence and ensure that the Video Footage was not destroyed or deleted.  Indeed, on March 12, 2017 and March 13, 2017, when Plaintiff submitted the formal requests for the specific Video Footage, this evidence existed and could have been preserved, as the requests were made repeatedly and were acknowledged well within the 30-day window of the NYPD's video retention policy.[33]

**D.**     **CCRB Investigation and Timely Request for the Video Footage of the Incident**

Plaintiff's reports of his claims—and specific requests for video evidence—sparked two simultaneous investigations: an internal investigation by the NYPD, and an external investigation by the CCRB.  On March 15, 2017, in connection with its investigation, the CCRB specifically requested video footage from the NYPD's TARU.[34]  On March 17, 2017, the CCRB *again* specifically requested video footage from the NYPD's LMSI.[35]  NYPD regulations require a response be sent within 10 days to the IAB's CCRB Liaison, which would have been March 25th

---

[29] ECF No. 21; ECF No. 37.
[30] ECF No. 37; Exs. E & F.
[31] Exs. E & F.
[32] Ex. F.
[33] ECF No. 37;  Exs. E & F; *see also* ECF No. 71.
[34] Ex. G at DEF 075; Ex. H at DEF 083–084.
[35] Ex. G at DEF 075.

and March 27th respectively.[36]  Both dates were prior to the impending automatic deletion date on or about April 11, 2017.

On March 28, 2017, the NYPD, via the IAB, made a production of documents to the CCRB; the production did not include the identified and requested videos.[37]  Having received no response to its timely request for the Video Footage, the CCRB interviewed Defendant Sergeant Tarakur Chowdhury on March 29, 2017, at which time the retention period had not yet passed and the Video Footage still existed.[38]  Defendant Chowdhury admitted in his deposition that he took no steps to preserve any video evidence,[39] even as he actively participated in the investigations.

On April 3, 2017, approximately one week before the end of the 30-day retention period of the requested videos on or about April 11, 2017, the NYPD declined to respond to the CCRB's follow up inquiry regarding video evidence because TARU detectives "were out of office."[40]  After stalling two more weeks, on April 18, 2017—approximately six days after the 30-day retention period had lapsed—the NYPD informed the CCRB that TARU "advised that request [for the video footage] likely be filled by end of week."[41]  On April 24, 2017, approximately two weeks after the Video Footage would have been securely deleted, the NYPD finally responded to the CCRB's request for the Video Footage and informed the IAB CCRB Liaison that evidence cannot be retrieved because the 30-day retention policy had taken effect, thereby confirming that the

---

[36] Ex. H at DEF 083 ("In accordance with Dept. Regulations forward copies of the records and/or information listed above within 10 days to the IAB, CCRB Liaison[.]"); *see also* NYPD Patrol Guide No. 211-14, *available at:* https://www.nyc.gov/site/nypd/about/about-nypd/manual.page ("Forward completed request and documents, electronically, within 10 days of receipt.").

[37] Ex. G at DEF 076.

[38] Ex. I at DEF 055; Ex. G at DEF 076.

[39] Ex. D at 45:11-14 ("Have you taken any steps to preserve any NYPD CCTV footage relating to this incident?  A. No.").

[40] Ex. G at DEF 076.

[41] *Id.* at DEF 077.

previously identified Video Footage was deleted ("No Media on Server – Past Pole recovery – Sgt. Hugel.").[42]   At all times before the automatic deletion of the identified and requested Video Footage, Defendants—as NYPD personnel—had access to CCTV systems.   Indeed, the Patrol Guide provides clear instruction to "a member of the service seek[ing] to archive and/or obtain a copy of footage from a CCTV camera."[43]

The NYPD delayed, both in bad faith and contrary to its own policies to respond within ten days of the CCRB request for the Video Footage, in order to deprive both the CCRB investigators and Plaintiff of the critical evidence.   The NYPD has never explained its delay in responding to the CCRB until two weeks after the retention period passed, its obfuscation of the existence of identified Video Footage, and its failure to preserve and archive the video evidence after it was identified and requested.

Unfortunately, after over four years of persistent denials and obfuscation, it was not until October 2021 when Defendants were finally forced to admit that Defendants failed to preserve the requested Video Footage and all video recordings of the incident were destroyed.

### E.   Defendants' Continued Bad Faith Obfuscation

Unaware that Defendants had failed to take steps to preserve the videos and long since allowed the 30-day period in which the Video Footage was retained to lapse, on October 22, 2018, Plaintiff filed a letter requesting that the Court compel Defendants to provide him with video recordings from security cameras "near the location of the incident alleged in the Complaint," and the names of the "other two male officers present during the incident."[44]   Even then, Defendants

---

[42] Ex. H at DEF 083.
[43]   NYPD   Patrol   Guide   Procedure   No:   212-122,   *available   at* https://www.nyc.gov/site/nypd/about/about-nypd/manual.page.
[44] ECF No. 21.

responded in bad faith, arguing to the Court that it should deny Plaintiff's request because discovery had not yet begun.[45]

Several months later, at the initial conference on January 8, 2020, Plaintiff raised the issue of the Video Footage again and "following directions from the Court, requested video recordings of the incident in his Initial Document Requests."[46]  Even though Defendants were aware that Plaintiff had specifically identified the Video Footage from two cameras during the specific time frame on March 11, 2017 and had repeatedly requested them for three years, Defendants objected to Plaintiff's requests as "vague and overbroad," and even claimed that "no video footage [was] recorded by NYPD security cameras of the alleged incident."[47]

**F.    Defendants Admit to the Destruction of the Video Footage**

Several more months later, on November 9, 2020, Plaintiff sent a letter to the Chambers of the Honorable Andrew L. Carter, Jr., asking the Court "to compel Defendants to provide video records of the incident," in response to Defendants' letter requesting a pre-motion conference.[48] On October 21, 2021, the Court ordered Defendants to respond to Plaintiff's request that Defendants be compelled to produce video records.[49]

On October 27, 2021, for the first time in this case, Defendants admitted that any "footage from NYPD security cameras [was] typically retained for a period of 30 days (or 28 days for cameras of a certain model) after which time it [was] deleted," further admitting that Defendants

---

[45] ECF No. 22.
[46] ECF No. 56 at 2 ("Specifically, plaintiff's Document Request No. 4 requested 'Video records from the NYPD security cameras Number 7-2669 (located at West 45 and Broadway/Seventh Ave) and Number 7-26158 (W 45/Broadway Manhattan) from 9 p.m. to 11 p.m. dated March 11, 2017,' and his Document Request No. 5 sought 'Answers from the NYPD FOIL unit to Sergei Chepilko for his request to provide and preserve videos, submitted very shortly after the incident'"); *see also* Ex. J.
[47] Ex. J at Response to Req. No. 4.
[48] ECF No. 52.
[49] ECF No. 54.

failed to perform their duty to preserve the video footage of the incident and that all such evidence had been destroyed.[50]

On November 10, 2021, this Court "denied Plaintiff's request to compel video records from Defendants as moot based on the representation by Defendants' counsel that no such records exist."[51]

## II.    ARGUMENT

### A.    An Adverse Inference Is Warranted Here

Under Federal Rule of Civil Procedure 37(e), an adverse inference that lost electronically stored information ("ESI"), such as video footage, was "unfavorable" to the party responsible for the loss is appropriate where: 1) the ESI "should have been preserved in the anticipation or conduct of litigation," 2) the loss is due to that party's failure "to take reasonable steps to preserve" the ESI, 3) the ESI "cannot be restored or replaced through additional discovery," and 4) the party responsible for the loss "acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2).  All of those elements are satisfied here.

#### 1.    The NYPD was obligated to preserve the Video Footage.

Defendants' counsel's representation to the Court that the Video Footage "was properly deleted" pursuant to the NYPD's retention policy "prior to defendants receiving notice of plaintiff's lawsuit," ECF No. 56 at 2, is inapposite.  Controlling case law makes clear that the NYPD's preservation duty arose much earlier than when Mr. Chepilko filed his lawsuit.

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to *future litigation*."  *E.g.*, *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581

---

[50] ECF No. 56 at 2.
[51] ECF No. 58 at 1.

(PKC) (JLC), 2021 WL 4190628, at *13 (S.D.N.Y. Aug. 18, 2021) (emphasis added) (quoting *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *18 (S.D.N.Y. June 20, 2019)).  In determining when the preservation duty attaches, the Court must determine "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation."  *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *13 (internal citation and quotation marks omitted).

Here, the NYPD's duty to preserve the Video Footage arose on March 11, 2017, or shortly thereafter, and certainly within the 30-day period before the Video Footage was automatically deleted.  "In situations in which 'a party has knowledge that certain types of incidents tend to trigger litigation, courts within the Second Circuit have found that a duty to preserve relevant video footage may attach as soon as the triggering incident occurs and prior to when a claim is filed.'"  *Castro v. Smith*, No. 16-CV-8147 (JGLC), 2023 WL 5371311, at *8 (S.D.N.Y. Aug. 22, 2023) (quoting *Taylor* v. *City of N.Y.*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013)).

It was reasonable to anticipate on or shortly after the day of the incident that Mr. Chepilko would initiate litigation.  In the 30-day period beginning with the March 11, 2017 incident and ending with the automatic deletion of the Video Footage on or about April 11, 2017, there were multiple events, each independently sufficient to cause the NYPD's preservation duty to attach:

- March 11, 2017:  Incident, during which NYPD officers used force and Mr. Chepilko requested the officers' names and badge numbers and attempted to record Defendants' conduct.

- March 12, 2017:  Mr. Chepilko called 911; during the call, Mr. Chepilko specifically identified the Video Footage and reported the incident to the IAB. NYPD IAB initiated an investigation.

- March 13, 2017:  Mr. Chepilko submitted two FOIL requests to the NYPD requesting the Video Footage.

- March 15, 2017:  In connection with its investigation, the CCRB specifically requested the Video Footage from NYPD's TARU.

- <u>March 17, 2017</u>: The CCRB specifically requested the Video Footage from NYPD's LMSI.

- <u>March 20, 2017</u>: NYPD FOIL Unit "acknowledg[ed]" Mr. Chepilko's FOIL requests.

- <u>March 29, 2017</u>: CCRB interviewed Defendant Sergeant Chowdhury regarding March 11 incident.

Given the facts of this case and the NYPD's policies related to the use of force, *supra* at 5–6, by as early as March 11, 2017 and by no later than March 29, 2017, it was reasonable for the NYPD to anticipate that the Video Footage might be relevant in potential future litigation.

In particular, even assuming the incident itself and Mr. Chepilko's request for the officers' names and badge numbers were not enough to cause the preservation duty to attach, Mr. Chepilko's reporting of the incident to the IAB was sufficient. *See, e.g.*, *Castro*, 2023 WL 5371311, at *9 (holding that inmate-plaintiff's submission of inmate grievance form, in addition to a letter requesting an investigation, put Department of Corrections on notice of potential litigation); *see also, e.g.*, *Shim-Larkin v. City of N.Y.*, No. 16-CV-6099 (AJN) (KNF), 2019 WL 5198792, at *9 (S.D.N.Y. Sept. 16, 2019) ("Receipt of Shim-Larkin's EEOC Charge on November 16, 2015, placed the defendant on notice . . . that litigation was likely to ensue and, at a minimum, that text messages exchanged between Shim-Larkin and Kravitz would be relevant to any ensuing litigation."). So were Mr. Chepilko's FOIL requests. *Rosa v. Genovese Drug Stores, Inc.*, No. 16-CV-5105 (NGG) (LB), 2017 WL 4350270, at *2 (E.D.N.Y. Apr. 24, 2017), *report and recommendation affirmed*, 2017 WL 4350276 (E.D.N.Y. July 31, 2017) (finding an obligation to preserve video evidence where party specifically requested it after the incident).

The IAB and CCRB investigations likewise were sufficient to create a duty to preserve the Video Footage. *See e.g.*, *Stanbro v. Westchester Cnty. Health Care Corp.*, Nos. 19-CV-10857 (KMK) (JCM), 20-CV-1591 (KMK) (JCM), 2021 WL 3863396, at *11 (S.D.N.Y. Aug. 27, 2021)

13

("In circumstances where a department of corrections internally investigates an incident within a prison, the department is obligated to preserve…all evidence that could be relevant to litigation that the DOC should have known could be forthcoming," including "evidence that could be relevant for a potential inmate-plaintiff's purposes." (internal citations and quotation marks omitted)).

Thus, the NYPD's duty to preserve the Video Footage attached prior to the Video Footage being deleted pursuant to the routine document retention and destruction policy.

### 2.    NYPD failed to take reasonable steps to preserve the Video Footage.

Once the duty to preserve relevant ESI arises, the party in possession of the ESI must take "reasonable steps" to preserve it.    Fed. R. Civ. P. 37(e).    Courts have equated the "reasonable steps" inquiry to "roughly a negligence standard."    *Hughes v. City of* 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017)).    This means that a party with a duty to preserve ESI "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."    *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y. 2020) (internal citation and quotation marks omitted).

Once the duty to preserve ESI attaches, "any destruction of documents is, at a minimum, negligent."    *Hughes*, 2021 WL 4295209, at *11 (quoting *Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 61).    And "[w]here a party fails to timely institute a formal litigation hold and otherwise informally preserve ESI," the Court can conclude that it did not undertake reasonable steps to preserve ESI. *Id.*

The record is clear that the NYPD failed to take reasonable steps to preserve the Video Footage by suspending the routine document retention and destruction policy applicable to the Video Footage, under which footage from NYPD security cameras is retained for a period of 30 days (or 28 days for cameras of a certain model), and then deleted.    Defendants' counsel has stated that the

14

Video Footage was destroyed under this policy.  ECF No. 56 at 2.  And Defendant Chowdhury admitted in his deposition that he took no steps to preserve any video evidence related to the incident, despite being aware of its existence and being under investigation for the March 11 incident before it was deleted.  Ex. D (Chowdhury Tr.) at 44:17–45:14; *id.* at 39:23–40:3.

As courts within this district have found in similar cases, these facts alone establish failure to take reasonable steps to preserve ESI.   For example,  in *Hughes*, the NYPD deleted 911 calls and radio transmissions sought by the plaintiff in connection with claims alleging violations of his constitutional rights and did so *after* receiving the plaintiff's notice of claim.   *See* 2021 WL 4295209, at \*12.   The *Hughes* court found that the NYPD's failure to suspend its routine document retention and destruction policies constituted an "irrefutabl[e]" failure to take reasonable steps to preserve ESI.   *See id.* at \*12–13.   Likewise here, the NYPD's failure to suspend the routine deletion of the Video Footage after the incident, after Mr. Chepilko's reporting of the incident, and after repeated requests for the Video Footage from Mr. Chepilko and others, constitutes a failure to take reasonable steps to preserve ESI.

### 3.    The Video Footage cannot be restored.

It is undisputed that the spoliated ESI cannot be restored or replaced.  Defendants' counsel represented to this Court that the Video Footage was deleted, that Defendants "are not aware of any video footage of the incident from NYPD security cameras," and that Defendants could not respond to Mr. Chepilko's request for the Video Footage.  ECF No. 56 at 2.

### 4.    NYPD intended to deprive Mr. Chepilko of the Video Footage.

An adverse inference that the destroyed Video Footage is unfavorable to Defendants is warranted here because the NYPD "inten[ded] to deprive [Mr. Chepilko] of" use of the Video

Footage.  Fed. R. Civ. P. 37(e)(2).[52]  Courts may consider circumstantial evidence to determine

whether a party intended to deprive another party of use of information in litigation.  *See, e.g.*,

*Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431–32 (W.D.N.Y. 2017).  "[Fed. R. Civ. P.

37](e)(2) does not require any further finding of prejudice" after a court establishes there was an

intent to deprive.  Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 Amendment.[53]

---

[52] In a bench trial, a court may draw an adverse inference itself.  *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 647 F. Supp. 3d 145, 250 (S.D.N.Y. 2022); *see also* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (stating that a finding that a party intended to deprive another party of the use of evidence in litigation may be found "when presiding at a bench trial").

[53] Mr. Chepilko is, nevertheless, prejudiced by the spoliation of the Video Footage.  Evaluating whether a party was prejudiced by the destruction of ESI "necessarily includes an evaluation of the information's importance in the litigation."  Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment.  Here, the Video Footage is critical to this litigation because had the NYPD preserved it, the Video Footage would have been the only objective evidence available in this case that could conclusively demonstrate what took place during the incident on March 11, 2017 between Mr. Chepilko, Defendants, and the other nonparty police officers.  The nature of any physical contact between Mr. Chepilko and Defendants; the events leading up to the issuance of the criminal summons to Mr. Chepilko; and Defendants' response (or lack of response) to any potential harm inflicted on Mr. Chepilko go to the heart of Mr. Chepilko's claims to be tried in this case.  In fact, even the CCRB could not conclude "absent further evidence" (*i.e.*, evidence other than the statements made by the five police officers that witnessed the incident) that, among other things, Defendant Henry did not push Mr. Chepilko, and could not conclude how Defendant Chowdhury responded to Mr. Chepilko's requests.  Ex. K at DEF 022–23.  In short, the destruction of the Video Footage deprived Mr. Chepilko of "relevant, non-cumulative, and potentially powerful evidence" and its loss is therefore prejudicial to Mr. Chepilko.  *Ransom v. Andrews*, No. 21-CV-6343 (JPO) (BCM), 2022 WL 16555362, at *5 (S.D.N.Y. Oct. 31, 2022) (finding that plaintiff was prejudiced by loss of video footage where video could have shown whether defendant "failed to intervene" while plaintiff was vulnerable to attack).

Accordingly, even if the NYPD did not intend to deprive Mr. Chepilko of use of the Video Footage, the destruction of the Video Footage would warrant sanctions under Rule 37(e)(1).  Therefore, in the event the Court finds no intent to deprive here, Mr. Chepilko reserves his right to seek appropriate relief prior to trial.  *Aquino v. Alexander Cap., LP*, No. 21-cv-1355 (JSR), 2023 WL 2751541, at *1 (S.D.N.Y. Mar. 31, 2023) (permitting parties that moved for spoliation sanctions under Rule 37(e)(2) to "request[] other appropriate relief under Fed. R. Civ. P. 37(e)(1) in their motions in *limine* or at trial").

The NYPD's refusal to preserve and produce the Video Footage in response to the CCRB's repeated requests and communications to the NYPD evinces the NYPD's clear intent to prevent Mr. Chepilko from using the Video Footage in this litigation.

Just two days after the incident, Mr. Chepilko filed a complaint with the CCRB. *See* Ex. K at DEF 019. Two days later, the CCRB sent a "Request for Records and/or Information" to the IAB and TARU of the NYPD specifically requesting "all video footage from 9:15pm to 10:15pm, March 11, 2017" for three cameras located near the location of the incident. *See* Ex. H at DEF 083; Ex. C (Henry Tr.) at 49:14–53:24. The NYPD did not respond to that request until April 24, 2017—two weeks after the time the videos were deleted subject to the NYPD's 30-day retention period for security camera footage. Ex. H at DEF 083; ECF No. 56 at 2.

After initially making the request for the Video Footage, but before the Video Footage was destroyed, the CCRB made multiple, unsuccessful attempts to contact the IAB regarding the outstanding request for the Video Footage, including on April 3 and April 4, 2017. Ex. G at DEF 076–077. The IAB finally responded to the CCRB on Tuesday, April 18, 2017—approximately a week after the end of the 30-day retention period, and more than 20 days after TARU was, pursuant to internal policies, required to provide responsive records to the IAB. *Id.* at DEF 077; Ex. H at 083 ("In accordance with Dept. Regulations forward copies of the records and/or information listed above within *10 days* to the IAB, CCRB Liaison . . . .") (emphasis added). Even then, the IAB only informed the CCRB that it would "likely" respond to the request by "end of week." Ex. G at DEF 077. The IAB did not respond to the CCRB with TARU's response until the following Tuesday, April 24, when the IAB informed the CCRB that there was "No Media on Server – Past Pole recovery." *Id.*; Ex. H at DEF 083.

Between the date the CCRB made its initial request for the video footage (March 15, 2017) and the date the NYPD responded to the request (April 24, 2017), the CCRB's investigation of Mr. Chepilko's complaint otherwise continued apace. A day after submitting its request for the Video Footage, the CCRB submitted a request for additional documents from the NYPD. Ex. G at DEF 075. The NYPD produced "police records" to the CCRB less than two weeks later, on March 28, 2017. *Id.* at DEF 076. The CCRB also interviewed Sergeants Chowdhury, Kwon, Marquez, and Peeters. *Id.* at DEF 076–077.[54]

Courts in this district and in other Second Circuit districts have concluded that a party intended to deprive another party of evidence where, like here, the party failed to preserve evidence despite receiving requests for the evidence prior to litigation or otherwise had notice that the evidence at issue would be important to future litigation. *See Shim-Larkin*, 2019 WL 5198792, at *9–10 (finding that defendant intentionally deprived plaintiff of relevant text messages after defendant failed to preserve the messages after plaintiff filed an EEOC charge against defendant); *Rosa*, 2017 WL 4350276, at *2 (finding that plaintiff was entitled to an adverse instruction at trial given defendant's failure to produce video evidence that defendant specifically requested five days after the incident); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 581–84 (S.D.N.Y. 2017) (finding that defendants were entitled to an adverse inference instruction where plaintiff failed to preserve documents she was on notice to preserve based on (1) plaintiff's submission of a demand letter to defendants and (2) plaintiff's filing of an EEOC charge); *Moody*, 271 F. Supp. 3d at 431–32 (permitting an adverse inference instruction where defendants allowed data on train event recorder—deemed by the court to be "highly relevant—if not the most important objective evidence"—to be overwritten despite knowledge that defendants had duty to preserve data).

---

[54] The CCRB interviewed Sergeant Henry on May 4, 2017. Ex. G at DEF 078.

Furthermore, a party's decision to selectively comply with its obligation to provide evidence while destroying other evidence, as the NYPD did when it responded to one CCRB request with police records but willfully neglected to respond to the request for video footage until the footage was deleted, "evince[s] the kind of deliberate behavior that sanctions are intended to prevent and weigh in favor of an adverse inference." *Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 670 (S.D.N.Y. 2017), *rev'd on other grounds sub nom. Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc.*, 906 F.3d 253 (2d Cir. 2018) (finding intent to deprive where sanctioned party had preserved pictures stored on his mobile phone but did not preserve text messages also on the phone).

In sum, the CCRB's record of its ill-fated attempts to obtain the Video Footage illustrates that the NYPD's failure to preserve or produce the Video Footage rose above mere negligence or gross negligence. Instead, these events demonstrate that in spite of having ample warning that the Video Footage would be used in potential future litigation, and despite having ample opportunity to preserve the Video Footage in response to multiple requests and pursuant to its own internal policies, the NYPD intended to destroy the Video Footage so that it could not be used by Mr. Chepilko. Accordingly, the Court should apply an adverse inference.

**B.      NYPD's Spoliation is Properly Attributed to Defendants.**

Where a plaintiff sues law enforcement officers in their individual capacities and the law enforcement agency that employs those officers is found to have spoliated relevant evidence, that spoliation is properly attributed to the officer defendants where the interests of the officers and the department are "sufficiently aligned and closely interrelated." *See Gross* v. *Lunduski*, 304 F.R.D. 136, 143 (W.D.N.Y. 2014) (regarding DOC officers). Here, the New York City Law Department's representation of the officer Defendants demonstrates that the City (and the NYPD as a City department) has a substantial interest in the case. *See id.*

19

In determining whether to impute spoliation of evidence to officer defendants, courts also consider the defendants' "practical ability" to obtain evidence from their employer.    *See, e.g.*, *Stanbro*, 2021 WL 3863396, at *9.    This factor also weighs in favor of imputing the NYPD's spoliation of the Video Footage to the officer Defendants.    Defendant Chowdhury, who was a sergeant on the date of the incident, testified that he has the practical ability to obtain NYPD CCTV footage from NYPD by requesting it from the NYPD's LMSI.  Ex. D (Chowdhury Tr.) at 46:11-25.  Sergeant Mark Kwon, a witness to the incident (who was a police officer at the time, but has since been promoted), further confirmed that NYPD sergeants have the ability to access such footage in connection with investigations, including CCRB investigations, and, furthermore, that sergeants *should* access and provide footage to the relevant investigatory body upon request.  Ex. L (Rough Kwon Tr.) at 22:9–24:22[55]; 28:3-18.  Moreover, in  representing Defendants Henry and Chowdhury, the Law Department has produced other evidence in this litigation that was in the NYPD's physical custody.    Defendants' ability to obtain this evidence for use in the instant litigation through their counsel, the Law Department, shows that they could have obtained the Video Footage had it not been destroyed.  *See Stanbro*, 2021 WL 3863396, at *9 (citing *Guillory* v. *Skelly*, No. 12-cv-00847(F), 2014 WL 4542468, at *8 (W.D.N.Y. Sept. 11, 2014)).

Finally, Mr. Chepilko's March 2017 FOIL requests—which put the NYPD on notice of potential litigation and created a duty to preserve the Video Footage before it was deleted, *supra* at 6–7—were "acknowledge[ed]" by the NYPD's FOIL Unit on March 20, 2017.  Exs. E & F.  The

---

[55] Ex. L (Rough Kwon Tr.) at 23:2-15:  "Q.  Now, in your current position as sergeant could you pull footage from those cameras?  A.  Yes, I could.  Q.  Have you ever -- sorry, go ahead.  A.  I need a good reason to do so.  I just can't access footage for the sake of it.  Q.  What would a good reason be to access footage?  MR. FRANK:  Objection.  A.  ***If an investigation came down that requires me looking into do so.  I would have to pull specific time and location if I'm capable of, yeah.***" (emphasis added).

FOIL Unit is within NYPD's Legal Bureau.[56]  Thus, the NYPD's Legal Bureau was on notice of potential litigation by March 20, 2017, at the latest, but nonetheless failed to preserve the Video Footage before it was deleted on or about April 11, 2017.  The NYPD's failure to preserve the Video Footage "can and indeed must be imputed" to Defendants.  *See Ransom*, 2022 WL 16555362, at *4 (imputing DOC's spoliation to officer defendants where Law Department and DOC's legal division were on notice of duty to preserve and "failed to take reasonable steps to preserve the video evidence").

**C.    <u>Mr. Chepilko's Motion is Timely.</u>**

Because the NYPD destroyed the Video Footage nearly six years ago, and nearly a year before Mr. Chepilko filed the Complaint in this case, Mr. Chepilko could not have made this motion earlier to enable this court to "obtain compliance with [its] discovery orders" to produce the Video Footage, a key purpose of Rule 37 sanctions.  *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-1570 (GBD) (SN), 2018 WL 4096106, at *2 (S.D.N.Y. Aug. 27, 2018).

Rule 37 sanctions are designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal quotation marks omitted).  Ordering sanctions at this juncture would still serve these purposes by preventing Defendants from benefitting at trial from the improper destruction of the only objective evidence that was available in connection with this incident.

---

[56]  *See*  https://www.nyc.gov/site/nypd/bureaus/administrative/document-production-foil-requests.page.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiff's motion and apply an adverse

inference against Defendants as a result of the destruction of the Video Footage.

Dated: New York, New York
       January 10, 2024

HUNTON ANDREWS KURTH LLP

Mitchell E. McCloy
200 Park Avenue
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100
mmccloy@huntonAK.com

Kathleen E. Perkins (*pro hac vice*)
One South at The Plaza, Suite 3500
101 South Tryon Street
Charlotte, North Carolina 28280
Telephone: (704) 378-4713
Facsimile: (704) 378-4890
kperkins@HuntonAK.com

*Attorneys for Plaintiff Sergei Chepilko*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 10, 2024 I filed a true and correct copy of the foregoing document via the Court's electronic-filing system, which will send electronic notification of such filing to all counsel-of-record in this action.

Mitchell E. McCloy