```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:      161                      │
│ DATE FILED:   03/21/2024             │
└─────────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Sergei Chepilko,**

                        **Plaintiff,**

            **-against-**

**Police Officer Scott Henry, et al.,**

                        **Defendants.**

**1:18-cv-02195 (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiff, Sergei Chepilko ("Plaintiff" or "Mr. Chepilko"), brings this action against Defendants Lieutenant Scott Henry ("Lt. Henry") and Sergeant Tarakur Chowdhury ("Sgt. Chowdhury") (collectively, the "Defendants") of the New York City Police Department ("NYPD"), alleging claims arising out of an incident that occurred in Times Square on March 11, 2017.[1] (*See* Compl., ECF No. 2.) On February 26 and 27, 2024, the Court held a bench trial on Plaintiff's four remaining claims, pursuant to 42 U.S.C. § 1983, for malicious prosecution, excessive force, First Amendment retaliation and failure to intervene.

This Opinion and Order resolves Plaintiff's motion for sanctions regarding the alleged spoliation of video evidence (Pl.'s Mot. for Sanctions, ECF No. 115) and sets forth the Court's findings of fact and conclusions of law following the bench trial in accordance with Rule 52(a)(1) of the Federal Rule of Civil Procedure.

---

[1] At the time of the incident, Lt. Henry held the rank of Police Officer. (*See* Trial Tr. ("Tr."), ECF Nos. 155, 157 & 159, at 121 (Henry).) In his Complaint, Plaintiff also asserted claims against the City of New York, as well as state law claims. (*See* Compl., ECF No. 2.) Those claims were dismissed by then-presiding District Judge Andrew L. Carter, Jr., on September 29, 2022. *See Chepilko v. City of New York*, No. 18-CV-02195 (ALC) (SDA), 2022 WL 4554961 (S.D.N.Y. Sept. 29, 2022).

**PLAINTIFF'S MOTION FOR SANCTIONS**

Plaintiff moves for sanctions, pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, for "an adverse inference against Defendants as a result of the destruction" of video footage from NYPD cameras. (Pl.'s Sanctions Mem., ECF No. 116, at 1.) For the reasons set forth below, Plaintiff's motion is denied.

**I.    Relevant Background**

The factual predicate of this action arose out of an incident that occurred in Times Square of New York City on March 11, 2017. Plaintiff, who proceeded *pro se* in this action until it was trial-ready, filed his Complaint on March 10, 2018, about one year after the incident. (*See* Compl.) On October 22, 2018, Plaintiff wrote to the Court seeking to compel Defendants, which at the time also included the City of New York, to produce video recordings from NYPD security cameras 7-2669 (West 45th Street and Broadway) and 7-26158 (West 44th Street and Seven Avenue) from between 9:30 p.m. and 10:30 p.m. on March 11, 2017, the date of the incident. (Pl.'s 10/22/18 Letter, ECF No. 21.) Defendants filed their response on October 26, 2018, arguing that Plaintiff's motion to compel was premature since discovery had not yet commenced, but stating "[n]otwithstanding, Defendants continue to conduct their investigation into this matter pursuant to [Federal Rule of Civil Procedure] 11, and have requested NYPD to preserve any video footage related to the incident in its possession that still exists." (Defs.' 10/26/18 Letter, ECF No. 22.)

On November 27, 2019, this case was referred to the undersigned for general pretrial purposes. (*See* Order of Ref., ECF No. 26.) The undersigned held an Initial Pretrial Conference on January 8, 2020 and entered a Case Management Plan. (Case Mgmt. Plan, ECF No. 30.) Discovery concluded on October 1, 2020. (*See* 8/21/20 Order, ECF No. 40.) Thereafter, a dispute arose

regarding belated interrogatories served by Plaintiff, and the Court allowed some additional discovery. (*See* Defs.' 10/15/20 Letter, ECF No. 44; 10/20/20 Order, ECF No. 45.) On October 30, 2020, Defendants filed a pre-motion conference letter addressed to Judge Carter, seeking to make a motion for summary judgment. (Defs.' 10/30/20 Letter, ECF No. 46.)

On November 10, 2020, Plaintiff sent an email responding to Defendants' pre-motion letter, but Plaintiff's correspondence was not filed to the docket until October 21, 2021. (*See* Pl.'s 10/21/21 Letter, ECF No. 52; *see also* 10/21/21 Order, ECF No. 53.) In his email, Plaintiff wrote that "within several days from the date of the incident" he had submitted requests "to the NYPD [Freedom of Information Law ('FOIL')] unit to preserve and provide video records from the two numbered NYPD cameras" and asked the Court to compel Defendants to provide video records of the incident. (*See* Pl.'s 10/21/21 Letter.)

On October 27, 2021, Defendants advised the Court that they were "not aware of any video footage of the incident from NYPD security cameras." (*See* Defs.' 10/27/21 Letter, ECF No. 56, at 2.) The New York City Law Department, Office of the Corporation Counsel (the "Law Department"), on behalf of the Defendants, explained:

> Footage from NYPD security cameras is typically retained for a period of 30 days (or 28 days for cameras of a certain model) after which time it is deleted. In this case, the alleged incident occurred on March 11, 2017, but plaintiff did not file his complaint until March 10, 2018 — nearly one year later. (Docket Entry No. 2) As such, any potential camera footage of the alleged incident was properly deleted prior to defendants receiving notice of plaintiff's lawsuit.

(*Id.*)

Thus, on November 10, 2021, following a telephone conference, the Court denied Plaintiff's request to compel video records as moot. (11/10/21 Order, ECF No. 58, ¶ 1.) However, since Plaintiff contended that he had submitted requests to the NYPD FOIL unit, the Court

directed Defendants, by November 30, 2021, to search for and produce to Plaintiff copies of any FOIL request made by Plaintiff to the NYPD in March 2017 and any response, and to file a letter advising the Court as to whether any such documents were located and produced. (*Id*. ¶ 2.)

Following four extensions of the deadline to locate and produce Plaintiff's FOIL requests (*see* 12/1/21 Order, ECF No. 65; 12/21/21 Order, ECF No. 69; 1/5/22 Order, ECF No. 72; 1/19/22 Order, ECF No. 74), on February 17, 2022, the Law Department filed a letter acknowledging that Plaintiff had made two FOIL requests in March 2017, but that his requests and the responses from the NYPD FOIL Unit could not be located. (*See* Defs.' 2/17/22 Letter, ECF No. 75, at 2.) However, the Law Department was able to locate and produce "printouts from the NYPD FOIL database summarizing each of [P]laintiff's FOIL requests and the responses from the NYPD FOIL Unit." (*Id*.) Thus, Defendants requested that they be relieved of their obligation to locate and produce the subject NYPD FOIL records. (*See id*.)

On February 19, 2022, based upon the representations of Defendants' counsel in the February 17, 2022 letter, the Court granted Defendants' request to relieve them of their obligation to produce the NYPD FOIL records, stating: "Defendants cannot produce that which they do not have." (*See* 2/19/22 Order, ECF No. 77, at 2.) However, the Court stated that "nothing in this Order shall prevent Plaintiff from making a motion for spoliation sanctions at the appropriate time." (*Id*.)

On August 18, 2023, the parties' consented to my jurisdiction for all purposes. (Consent, ECF No. 101.) On January 10, 2024, Plaintiff filed the motion for sanctions that is now before the Court. (*See* Pl.'s Mot. for Sanctions.) Defendants filed their opposition on January 26, 2024, and Plaintiff filed his reply on January 29, 2024. (Defs.' Sanctions Opp., ECF No. 134; Pl.'s Sanctions

Reply, ECF No. 137.) Because resolution of Plaintiff's motion rested, at least in part, on disputed issues of fact, the Court deferred deciding the motion until following the bench trial. *See Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 711 (S.D.N.Y. 2017), *aff'd sub nom. Tchatat v. City of New York*, 795 F. App'x 34 (2d Cir. 2019).

On February 26 and 27, 2024, the Court held a bench trial on Plaintiff's claims as discussed herein, including testimony relevant for Plaintiff's motion for sanctions. (*See generally* Tr.) On March 6, 2024, the Court heard closing arguments, including oral argument on Plaintiff's motion for sanctions. (*See* Tr. at 224-86.)

## II.   <u>Findings Of Fact Relevant To Motion For Sanctions</u>

During the bench trial, the parties introduced evidence and testimony related to the alleged spoliation that is the basis for Plaintiff's motion for sanctions. The Court makes the following finding of facts relevant to the spoliation issue.

Following the March 11, 2017 incident, Plaintiff recorded the numbers of two NYPD cameras on separate poles that were facing the location of the incident. (Tr. at 57 (Chepilko).) One camera, on 44th Street, was numbered 7-26158 and the other camera was numbered 7-2669. (*Id.*) The following day, on March 12, 2017, Plaintiff called 911 to make a complaint regarding the prior-night's incident and provided the operator with the numbers of the NYPD video cameras. (*Id.* at 57-58; *see also* Pl.'s Ex. 37.)

On March 13, 2017, Plaintiff visited the NYPD FOIL unit at One Police Plaza and filled out a form requesting video footage from two NYPD cameras from 9:00 p.m. to 11:00 p.m. from the night of the incident. (Tr. at 59-60 (Chepilko).) The cameras identified in Plaintiff's FOIL Requests were cameras 7-26158 and 7-26164. (Pl.'s Ex. 12.) However, Plaintiff testified that he did not

know why one of the requests refers to camera 7-26164, since he had submitted requests for cameras 7-26158 and 7-2669. (Tr. at 70 (Chepilko).) Plaintiff's request for camera 7-16158 was denied by the FOIL Unit because no records existed and the request for camera 7-26164 was denied on privacy grounds. (Pl.'s Ex. 12; *see also* Tr. at 60 (Chepilko).)

The same day, *i.*e., March 13, 2017, Plaintiff visited the New York City Civilian Complaint Review Board ("CCRB") and was interviewed by an investigator. (Tr. at 67 (Chepilko).) On March 15, 2017, the CCRB requested footage from the NYPD's Technical Assistance Response Unit ("TARU"), through an Internal Affairs Bureau ("IAB") liaison, for three NYPD cameras, including camera 7-2669. (Pl.'s Ex. 24.) Sgt. Chowdhury was interviewed by the CCRB on March 29, 2017. (Pl.'s Ex. 23 at DEF076.) The parties agree that any video footage of the March 11, 2017 incident that existed on NYPD cameras was deleted on or about April 11, 2017, in accordance with the NYPD's 30-day retention policy. (*See, e.g.*, Pl.'s Sanctions Mem. at 2, 5-6; Defs.' 10/27/21 Letter at 2.)

**III.**   **Legal Standards**

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Spoliation of electronically stored information ("ESI"), including electronically stored video footage, is governed by Rule 37(e) of the Federal Rules of Civil Procedure, which was amended in 2015 to read as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the party;

> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

"Before determining whether sanctions are appropriate under either Rule 37(e)(1) or Rule 37(e)(2), the Court must first determine whether the threshold requirements have been satisfied: (1) that relevant ESI existed; (2) that the ESI should have been preserved in anticipation of litigation; (3) that the allegedly spoliating party did not take reasonable steps to preserve the ESI; and (4) that the ESI cannot be entirely restored or replaced." *Castro v. Smith*, No. 16-CV-08147 (JGLC), 2023 WL 5371311, at *7 (S.D.N.Y. Aug. 22, 2023) (citing *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-09363 (ALC) (DF), 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018)). The party seeking spoliation sanctions has the burden of establishing these threshold elements by a preponderance of the evidence. *See id.* at *7 (quoting *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 509-10 (S.D.N.Y. 2013)); *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-02581 (PKC) (JLC), 2021 WL 4190628, at *13 n.17 (S.D.N.Y. Aug. 18, 2021) (applying preponderance standard to threshold elements and noting that different standard applies for determining intent and prejudice).[2]

---

[2] After the threshold requirements have been satisfied, the Court considers whether sanctions are appropriate under either Rule 37(e)(1) or 37(e)(2) of the Federal Rules of Civil Procedure. Rule 37(e)(1) permits the imposition of sanctions only when there is "prejudice to another party from loss of the

These threshold spoliation issues are "condition[s] precedent to this Court's imposition of sanctions[.]" *Kraus v. Gen. Motors Corp.*, No. 03-CV-04467 (CM), 2007 WL 3146911, at *1-2 (S.D.N.Y. Oct. 24, 2007). "A district court has wide discretion in determining whether spoliation sanctions are appropriate." *Ungar v. City of New York*, No. 21-1384-CV, 2022 WL 10219749, at *3 (2d Cir. Oct. 18, 2022) (citing *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

## IV.   Application

For the reasons set forth below, the Court finds, in its discretion, that Plaintiff has not met his threshold burden to show that any video footage should have been preserved in anticipation of litigation.

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *In Re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 148 (2d Cir. 2008) (quoting *Fujitsu Ltd.*, 247 F.3d at 436).[3] Thus, "[t]he threshold consideration in a

---

information." Fed. R. Civ. P. 37(e)(1). The more severe sanctions pursuant to Rule 37(e)(2) require a showing that the non-moving party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "If a finding of intent is made, no separate showing of prejudice is required." *Castro*, 2023 WL 5371311, at *10 (citing Fed. R. Civ. P. 37(e) Advisory Committee's note to 2015 Amendment ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. . . . [T]he finding of intent required by the subdivision can support . . . an inference that the opposing party was prejudiced by the loss of information that would have favored its position.")). "Although Rule 37(e)(2) does not specify the standard by which the 'intent to deprive' must be established, it is appropriate, given the severity of the sanctions permitted under that provision of the Rule, for the intent finding to be based on clear and convincing evidence." *Id.* (quoting *Lokai*, 2018 WL 1512055, at *8).

[3] "Aside from modifying the state of mind required of a spoliator, the 2015 amendments to Rule 37(e) did not significantly alter the elements required at common law for sanctions to issue." *Castro*, 2023 WL 5371311, at *5 (quoting *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018), *aff'd*, No. 21-1384-CV, 2022 WL 10219749 (2d Cir. Oct. 18, 2022)); *see also CBF Industria de Gusa S/A*, 2021 WL 4190628, at *13 n.18 ("The 2015 amendments to Rule 37(e) did not change previously existing federal standards

spoliation analysis is determining when [the] duty to preserve evidence arose." *Medcenter Holdings Inc. v. Web MD Health Corp.*, No. 20-CV-00053 (ALC) (GWG), 2023 WL 5963616, at *4 (S.D.N.Y. Sept. 14, 2023). "In many cases, the duty to preserve begins when the plaintiff files suit, but it 'varies with the circumstances of the case.'" *Kosmidis v. Port Auth. of N.Y. & N.J.*, No. 18-CV-08413 (AJN) (RWL), 2020 WL 5754605, at *4 (S.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 7022479 (S.D.N.Y. Nov. 30, 2020) (quoting *Quraishi v. Port Authority of N.Y. and N.J.*, No. 13-CV-02706, 2015 WL 3815011, at *5 (S.D.N.Y. June 18, 2015)). "The duty to preserve can arise '[e]ven before formal initiation of an action, once a party reasonably anticipates litigation.'" *Id.* (quoting *Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17-CV-01927 (PAE), 2018 WL 6191039, at *7 (S.D.N.Y. Nov. 28, 2018)).

Plaintiff argues that Defendants should have anticipated litigation, and therefore had a duty to preserve relevant video footage, based on: (1) the March 11, 2017 incident itself; (2) Plaintiff's March 12, 2017 911 call; (3) Plaintiff's March 13, 2017 FOIL requests and the NYPD's acknowledgement of those requests on March 20, 2017; (4) the CCRB requests for video footage on March 15 and/or 17, 2017; and/or (5) the CCRB investigator's March 29, 2017 interview of Sgt. Chowdhury. (Pl.'s Sanctions Mem. at 12-13.)

First, Plaintiff has not met his burden to show that Defendants should have anticipated litigation based upon the incident itself. Typically, the Court asks whether a "reasonable party in the same factual circumstances would have reasonably foreseen litigation." *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *13 (citation omitted). Plaintiff argues that the March 11, 2017

---

concerning when a party's duty to preserve attaches and what evidence a party is obligated to preserve."). Accordingly, the Court cites to pre-2015 cases relevant to the duty to preserve.

incident constituted the type of incident that "tend[s] to trigger litigation[,]" in part due to the use of excessive force, and, therefore, Defendants should have anticipated litigation "as soon as the triggering incident occur[ed]." (Pl.'s Sanctions Mem. at 12-13.) However, as set forth below, the Court finds that the amount of force used by Lt. Henry was not excessive. Nor will the Court endorse a bright line rule that a police officer should anticipate litigation every time he issues a summons. *See, e.g.*, *Tchatat*, 249 F. Supp. 3d at 708-09 (suggesting "no case law supports the notion that an arrest invariably triggers a duty to preserve evidence of the arrest for potential civil litigation"). The cases cited by Plaintiff are distinguishable in that they arose in the corrections context and involved lawsuits by inmates who were injured, often seriously, while in custody. (*See* Pl.'s Sanctions Mem. at 12 (citing *Castro*, 2023 WL 5371311, at *8; *Taylor v. City of New York*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013)).) Here, by contrast, Plaintiff was issued a summons on a public street and was not injured. (*See infra*; *see also* Defs.' Sanctions Opp. at 12-15.) Thus, the Court is not persuaded that, on the facts of this case, Defendants should have anticipated litigation based on the incident itself.[4]

Second, Plaintiff has not met his burden to show that Defendants should have anticipated litigation based on his FOIL requests. The evidence before the Court shows that Plaintiff went to One Police Plaza and submitted FOIL requests for video footage from two NYPD cameras. (Pl.'s Ex. 12; Tr. at 59 (Chepilko).) Plaintiff did not testify that he told anyone at the NYPD FOIL unit the purpose of his request and the summaries of Plaintiff's requests do not contain any information as to why Plaintiff requested the video footage. Plaintiff could have been requesting footage from

---

[4] Similarly, the Court finds that Plaintiff's 911 call on March 12, 2017 did not trigger a duty to preserve, since Plaintiff merely advised the 911 operator that Lt. Henry "pushed [Plaintiff] several times." (McCloy Decl., Ex. A., ECF No. 117-1, at DEF 031.)

NYPD cameras for any number of reasons unrelated to conduct by the NYPD and unrelated to litigation. Thus, there is no basis to conclude that anyone at the NYPD should have anticipated litigation based on Plaintiff's FOIL requests.[5]

Finally, Plaintiff has not met his burden to show that Defendants should have anticipated litigation based on any of the events that occurred as part of the CCRB investigation.[6] The CCRB, which is independent of the NYPD, investigates civilian complaints of police misconduct by sworn officers of the NYPD in four areas: force that is excessive or unnecessary; abuse of authority; discourtesy; and offensive language. *See* CCRB Frequently Asked Questions (FAQ 2), https://perma.cc/Q7MR-H5H3. Thus, the CCRB provides an avenue for civilian complaints that is limited and distinct from the litigation process. As with the issue of whether a police officer should anticipate litigation every time (s)he makes an arrest or issues a summons, the Court declines to apply a bright line rule that the NYPD should anticipate litigation every time an individual files a complaint with the CCRB. *See Pane v. Greenburgh*, No. 07-CV-03216 (LMS), 2009 WL 10740040, at *3 (S.D.N.Y. Nov. 16, 2009) ("[T]here is no reason to conclude that at the time the computer was allegedly disposed of anyone knew or should have known that plaintiff would

---

[5] To the extent Plaintiff suggests that his FOIL requests triggered an independent duty of the NYPD to preserve the requested video footage, any such duty is distinct from a duty based on the anticipation of litigation and is not relevant to the Rule 37 analysis. In any event, Plaintiff testified that his request regarding camera 7-26158 was denied because there was no record and his other request referred to an incorrect camera.

[6] In his motion papers, Plaintiff also refers to an IAB investigation. (*See, e.g.*, Pl.'s Sanctions Mem. at 13.) The IAB is a unit within the NYPD that investigates corruption, perjury and off-duty criminal conduct. *See CCRB Frequently Asked Questions*, https://perma.cc/Q7MR-H5H3 (FAQ 13). Plaintiff did not separately testify regarding reporting to the IAB and the evidence before the Court does not address an IAB investigation, only the fact that the CCRB coordinated with an IAB liaison. In any event, the Court finds that any IAB investigation would not be enough for Defendants to have anticipated litigation for the same reasons that the CCRB complaint is insufficient.

commence litigation, beyond the citizen complaint she had already filed."). Further, the fact that the CCRB investigation pertained to the use of force also is insufficient for the same reason that the incident itself did not give rise to a duty to preserve.

For the foregoing reasons, the Court finds that Plaintiff has not met his threshold burden to show that Defendants should have anticipated litigation on or prior to April 11, 2017 and, therefore, did not have a duty to preserve the video footage at issue in Plaintiff's motion for sanctions. Accordingly, Plaintiff's motion for sanctions is DENIED.[7]

### PLAINTIFF'S § 1983 CLAIMS – FINDINGS OF FACT AND CONCLUSIONS OF LAW[8]

Having carefully considered the evidence before it, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I.     Findings Of Fact

On the night of March 11, 2017, Mr. Chepilko was working as a ticket seller in Times Square. (Tr. at 20 (Chepilko).) At some point, Mr. Chepilko noticed that another ticket seller, who he knew only by the name of Colin, was following him and making threatening gestures like cutting his neck. (*Id*. at 22-23.) Thereafter, Mr. Chepilko approached a group of five NYPD officers on Seventh Avenue between 44th and 45th Streets. (*Id*. at 20, 27.) Two of the officers, Sgt. Chowdhury and then-Police Officer (now Lt.) Marquez, were sitting in a police van parked in the middle of the block on the west side of 7th Avenue, and the other three officers were standing

---

[7] Even if a duty to preserve existed, any spoliation of the video footage would not alter the outcome set forth in the following section of this Opinion and Order since there is no evidence in the trial record that Lt. Henry or Sgt. Chowdhury had an intent to deprive Plaintiff of the video footage and therefore the possible case-altering sanctions under Fed. R. Civ. P. 37(e)(2) would not be applicable here.

[8] To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa.

on the sidewalk. (*Id*. at 28; *see also* Court Ex. 1 (indicating position of police van according to Plaintiff); Defs.' Ex. C (indicating position of police van according to Lt. Henry).) Mr. Chepilko approached the officers because he felt threatened by Colin's behavior and wanted to obtain Colin's real name and license number. (Tr. at 29 (Chepilko).) Mr. Chepilko approached Lt. Henry and reported Colin's threatening behavior and requested that Lt. Henry obtain Colin's real name and license number. (*Id*. at 32-33.) Lt. Henry told Mr. Chepilko to go in a different direction from Colin and that he could not provide the information even if he had it. (*Id*. at 33; Tr. at 132 (Henry).)

Sgt. Chowdhury, who was sitting in the driver's seat in the police van, gestured for Mr. Chepilko to come speak with him. (Tr. at 28, 35 (Chepilko); 165-66 (Chowdhury).) Sgt. Chowdhury intended for Mr. Chepilko to speak to him through the open passenger's side window, which was closest to the sidewalk. (Tr. at 166 (Chowdhury); *see also* Tr. at 30 (Chepilko testimony regarding direction of van).) However, Mr. Chepilko thought Sgt. Chowdhury wanted him to come to the driver's side window, so he walked around the front of the van and stood by the driver's side window. (Tr. at 35 (Chepilko).) Mr. Chepilko repeated to Sgt. Chowdhury his complaint about Colin and again requested information regarding Colin's real name and license number. (*Id*. at 37-38.)

The parties dispute precisely where Plaintiff was standing while he was talking to Sgt. Chowdhury and the amount of space between the police van and the adjacent lanes of traffic. Plaintiff testified that the police van was parked close to the curb in a dysfunctional bus lane that was 10 feet wide and that there were at least two feet between the driver's side window and the four lanes of moving traffic on Seventh Avenue. (Tr. at 28, 32, 35-36 (Chepilko).) He further testified that he was standing "close to the window well on the space, the side for the bus stop."

(*Id*. at 114.) Lt. Henry testified that the police van was parked "on the cusp of the bus stop[,]" although he did not remember if there were concrete barriers by the sidewalk or not.  (Tr. at 129-31 (Henry).) Sgt. Chowdhury testified that the van was parked in the bus lane close to the curb and there were four other lanes of traffic. (Tr. at 173, 179 (Chowdhury).) Sgt. Chowdhury did not recall the exact amount of space between the van door and moving traffic, but acknowledged that, during his deposition, he testified that it was about two feet. (*Id*. at 180-83.) Lt. Marquez testified that the van was parked in the bus lane, close to the curb, and that he could not see Mr. Chepilko's feet from the passenger side. (Tr. at 214-15 (Marquez).)

While Mr. Chepilko was talking to Sgt. Chowdhury, Lt. Henry walked in front of the van to where Mr. Chepilko was standing. (Tr. at 43 (Chepilko).) Plaintiff and Lt. Henry testified to competing versions of what happened next. Mr. Chepilko testified that Lt. Henry told him to "stop talking to [the] sergeant" and, without telling Mr. Chepilko to leave the street, put his hands on Plaintiff's chest and shoulder and shoved him four to six times until he reached the back of the van. (*Id*. at 43-44, 46.) Lt. Henry testified that Mr. Chepilko refused multiple verbal commands to move and Lt. Henry needed to address the traffic conditions, so Lt. Henry put one hand on Mr. Chepilko's shoulder and back and guided him to the sidewalk without applying any pressure. (Tr. at 135, 137-38 (Henry).)

Plaintiff testified that he stood talking to Sgt. Chowdhury for approximately three to four minutes, while Sgt. Chowdhury testified that he did not remember how long the conversation went on, but admitted that he testified during his deposition that it was between 15 and 20 minutes. (Tr. at 38 (Chepilko); 174-79 (Chowdhury).) Lt. Henry recalled being on the street for several minutes and Lt. Marquez testified that it was three to five minutes, which he recalled

after listening to an audio recording of his interview with the CCRB. (Tr. at 147 (Henry); 215, 218

(Marquez).)

Once back on the sidewalk, Lt Henry issued Mr. Chepilko a criminal summons for

disorderly conduct in violation of New York Penal Law § 240.20(5) (obstruction of vehicular

traffic). The summons stated that Mr. Chepilko was "standing in public street blocking the flow

of traffic . . . [and] refused multiple orders to get off the street onto sidewalk." (Pl.'s Ex. 14.) Prior

to Lt. Henry issuing the summons, Mr. Chepilko stared at Lt. Henry's badge, but did not verbally

asked Lt. Henry to provide his name or badge number. (Tr. at 47-48, 77-78 (Chepilko).) Mr.

Chepilko later wrote down the officers' names and badge numbers. (*Id*. at 57.) The summons was

dismissed on May 17, 2017. (Pl.'s Ex. 15; *see also* Tr. at 73 (Chepilko).)

## II.   Conclusions Of Law

Plaintiff bears the burden of proof to present evidence in support of the allegations set

forth in his Complaint and to prove his claims by a preponderance of the evidence. *See*

*C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 232 (S.D.N.Y. 2013) (burden of proof at

bench trial is on plaintiff to prove allegations by preponderance of evidence). The burden of

proving a fact by the preponderance of the evidence "simply requires the trier of fact to believe

that the existence of a fact is more probable than its nonexistence." *Metro. Stevedore Co. v.*

*Rambo*, 521 U.S. 121, 137 n.9 (1997). "As the finder of fact, the Court is entitled to make

credibility findings of the witnesses and testimony." *C=Holdings*, 992 F. Supp. 2d at 232.

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that there has been a

denial of a right, privilege or immunity secured by the Constitution or laws of the United States

and that the deprivation of such right, privilege or immunity occurred under color of state law.

*See* 42 U.S.C. § 1983; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). There is no dispute that, at the time of the incident in question, Lt. Henry and Sgt. Chowdhury were acting in their official capacities as members of the NYPD, and thus were acting under color of state law. For the reasons set forth below, after assessing the record evidence before it, and having weighed the credibility of the witnesses, the Court finds that Plaintiff has not proven by a preponderance of the evidence that Lt. Henry and/or Sgt. Chowdhury deprived him of a right guaranteed under the Constitution of the United States.

### A. Malicious Prosecution Claim Against Lt. Henry

Plaintiff brings his malicious prosecution claim against Lt. Henry. (*See* Pl.'s Proposed Findings, ECF No. 130, ¶ 67.) The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted); *see also Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) ("To sustain a [42 U.S.C.] § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty.").

Under New York law, a malicious prosecution claim has four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello*, 612 F.3d at 161. To succeed on a malicious prosecution claim under § 1983, a plaintiff must establish five elements in total, the four elements under New York law plus "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Collins v. City of New York*, 295 F. Supp. 3d 350, 368 (S.D.N.Y. 2018) (quoting *Rohman v. NYCTA*, 215 F.3d 208, 215 (2d Cir. 2000)).

"In the context of a malicious prosecution claim, probable cause under New York law is defined as the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994); *see also Smith v. City of New York*, No. 18-CV-05079 (MKV), 2021 WL 4267525, at *11 (S.D.N.Y. Sept. 20, 2021). Probable cause to prosecute is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated. *See Smith*, 2021 WL 4267525, at *11.

Under New York Penal Law § 240.20(5), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e obstructs vehicular or pedestrian traffic." N.Y. Penal Law § 240.20(5). "New York courts have interpreted [§ 240.20] to permit punishment only where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic." *Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006).

The Court finds that Lt. Henry had probable cause to issue Mr. Chepilko a summons for disorderly conduct in violation of § 240.20(5). The Court finds credible the testimony of Lt. Henry, Sgt. Chowdhury and Lt. Marquez that traffic was heavy and that Plaintiff was blocking traffic when he was standing at the driver's-side window of the police van. (Tr. at 134-35 (Henry); 168 (Chowdhury); 205-07 (Marquez).) Although Plaintiff testified that he did not block any cars from moving, he also testified that he was facing the direction of traffic and could not see vehicles until they had passed him. (Tr. at 36-37, 99 (Chepilko).) The Court also finds that it was reasonable for Lt. Henry to conclude that Plaintiff was causing more than a mere inconvenience to vehicular traffic given the amount of traffic and the location. In addition, it was reasonable for Lt. Henry to believe that Plaintiff was recklessly creating a risk of public inconvenience given the time and location of the incident, in the middle of Times Square on a Saturday night. (Tr. at 20, 131-32 (Henry).)

Accordingly, the Court finds that Lt. Henry had probable cause to issue a summons for disorderly conduct and, therefore, find in favor of Lt. Henry on the malicious prosecution claim. A separate, independent ground for finding in Lt. Henry's favor on the malicious prosecution claim is predicated on the doctrine of qualified immunity.

"Qualified immunity protects officials from damages liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Antic v. City of New York*, 740 F. App'x 203, 205 (2d Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Qualified immunity is an affirmative defense and the burden is on defendants to raise the defense and establish it at trial. *See Mesa v. City of New York*, No. 09-CV-10464 (JPO), 2013 WL 31002, at *7 (S.D.N.Y. Jan. 3, 2013) (citing *Lee v. Sandberg*, 136 F.3d 94,

101 (2d Cir. 1997)). "A police officer is entitled to qualified immunity in the context of a false arrest claim if there was at least 'arguable probable cause' at the time the officer arrested the plaintiff," *Antic v. City of New York*, 740 F. App'x 203, 205 (2d Cir. 2019) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)), "and a police officer likewise is entitled to qualified immunity on a malicious prosecution claim if there was 'arguable probable cause' at the time the criminal proceeding commenced and continued[.]" *Id*. (quoting *Betts v. Shearman*, 751 F.3d 78, 82, 83 (2d Cir. 2014)). "In assessing arguable probable cause, the inquiry is 'whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful.'" *Id*. (quoting *Figueroa*, 825 F.3d at 100). Here, the Court finds that a reasonable officer could find that Lt. Henry's conduct in issuing the summons was lawful and, therefore, Lt. Henry is entitled to qualified immunity.[9]

Because probable cause or arguable probable cause existed, the Court finds that Lt. Henry is entitled to judgment in his favor on Plaintiff's malicious prosecution claim.

**B.    Excessive Force Claim Against Lt. Henry**

Plaintiff brings his excessive force claim against Lt. Henry. (*See* Pl.'s Proposed Findings ¶ 74.) "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Determining whether the

---

[9] Based upon the Court's disposition of the malicious prosecution claim, the Court does not reach the issue of whether there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights," *Rohman*, 215 F.3d at 215.

force used to effect a particular seizure is 'reasonable' . . . requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.

In conducting this balancing, courts consider a number of factors, "including 'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251-52 (2d Cir. 2001)). Courts are "careful to evaluate the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. (quoting *Graham,* 490 U.S. at 397).

The Court finds that, under the circumstances, some force was warranted to remove Plaintiff from the street. As set forth above, the Court finds persuasive the testimony that Plaintiff was blocking traffic. The Court also finds that Lt. Henry acted in a good faith effort to ensure that traffic was not blocked and to ensure the safety of Mr. Chepilko and himself. (Tr. at 135 (Henry).)

On the issue of the amount of force used by Lt. Henry in getting Plaintiff to leave the street and return to the sidewalk, although the Court does not credit Lt. Henry's testimony that he applied "no pressure" to Mr. Chepilko, the Court does credit Lt. Henry's testimony to the extent that he testified he did not push or shove Mr. Chepilko in the manner Mr. Chepilko contends. (Tr. at 138-139 (Henry).) Lt. Henry's testimony on that point is supported by the credible testimony

of Sgt. Chowdhury and Lt. Marquez and the lack of evidence regarding any physical injury to

Plaintiff. (Tr. at 170-71 (Chowdhury), 209 (Marquez).)

Accordingly, the Court finds that the Lt. Henry used reasonable force to remove Plaintiff

from the street and Lt. Henry is entitled to judgment in their favor on Plaintiff's excessive force

claim.[10]

### C.  First Amendment Retaliation Claim Against Lt. Henry

Plaintiff brings his First Amendment retaliation claim against Lt. Henry, which is premised

on Plaintiff having been issued a criminal summons after Plaintiff attempted to record Lt. Henry's

badge number and record NYPD officers with his phone. (*See* Pl.'s Proposed Findings ¶ 86.) "To

plead a First Amendment retaliation claim, a plaintiff must show: (1) he has a right protected by

the First Amendment; (2) the defendant's actions were motivated or substantially caused by his

exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County.*

*of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). "The existence of probable cause will defeat . . . a

First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff

out of a retaliatory motive[.]" *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). This is because

"[a]n individual does not have a right under the First Amendment to be free from a criminal

prosecution supported by probable cause, even if that prosecution is in reality an unsuccessful

attempt to deter or silence criticism of the government." *Mozzochi v. Borden*, 959 F.2d 1174,

1180 (2d Cir. 1992).

---

[10] Accordingly, the Court does not address Defendants' qualified immunity arguments with respect to the
excessive force claim.

Because, as set forth above, the Court finds that Lt. Henry had probable (or arguable probable) cause to issue a criminal summons to Plaintiff, Plaintiff cannot establish a First Amendment retaliation claim based on the issuance of the summons. In any event, Plaintiff has not established that Lt. Henry's actions were motivated or substantially caused by Plaintiff's exercising his right to obtain Lt. Henry's name and shield numbers. As set forth above, Plaintiff testified that he "stared" at Lt. Henry's badge number, not that he verbally requested such information from Plaintiff. (Tr. at 47-48, 77-78 (Chepilko).) Thus, there is no basis to conclude that Lt. Henry even was aware Plaintiff was seeking that information, which is publicly visible in any event, or that he issued the summons as a result. Accordingly, the Court finds that Lt. Henry is entitled to judgment in his favor on Plaintiff's First Amendment retaliation claim.

**D.**      **Failure To Intervene Claim Against Sgt. Chowdhury**

Plaintiff brings his failure to intervene claim against Sgt. Chowdhury for his failure to intervene while Lt. Henry violated Plaintiff's rights. (*See* Pl.'s Proposed Findings ¶ 82.) Section 1983 "imposes liability not only on an officer who himself uses excessive force but also on fellow officers who fail to intervene when excessive force is used by a colleague in their presence." *Dollard v. City of New York*, 408 F. Supp. 3d 231, 235-36 (E.D.N.Y. 2019) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.")). However, "[i]n order for a law enforcement officer to be held liable for another officer's use of excessive force, "there must have been a realistic opportunity [for the former] to intervene to prevent the harm from occurring." *Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015). Thus, a police officer may be liable for failure to intervene under § 1983

where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012). A failure to intervene claim is a derivative claim that must be predicated upon a viable § 1983 claim. *See*, *e.g.*, *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order) (affirming dismissal of failure to intervene claim "[b]ecause the underlying constitutional claims were properly dismissed").

Because the Court finds that Plaintiff has not established a constitutional violation based on excessive force by Lt. Henry, Plaintiff cannot establish a failure to intervene claim against Sgt. Chowdhury. Accordingly, Sgt. Chowdhury is entitled to judgment in his favor on the failure to intervene claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions at ECF No. 115 is DENIED and judgment shall be rendered in favor of Defendants. The Clerk of Court is respectfully requested to enter judgment in favor of Defendants and close this case.

**SO ORDERED.**

Dated:     New York, New York
           March 21, 2024

_____
STEWART D. AARON
United States Magistrate Judge